UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60003-CIV-COHN/SELTZER

EDWARD BUTLER,

    Plaintiff,

v.

CITY OF FORT LAUDERDALE
and SCOTT HAGEMANN,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Scott Hagemann's Motion for Final Summary Judgment [DE 52] ("Motion").  The Court has carefully reviewed the Motion and all related filings and is otherwise fully advised in the premises.[1]

**I.  Background**

    **A.  Material Facts**[2]

On the night of December 27, 2009, Andrea Plath and her boyfriend, Matthew Marulis, were robbed in Fort Lauderdale by two men, one with a gun.  Defendant Scott

---

[1] Also pending is Plaintiff's Motion in Limine to Exclude Police Report, Affidavit of Officer Hagemann and Daubert Motion to Exclude Officer Hagemann's Opinion Testimony [DE 67].  Because the Court concludes that Defendant is entitled to summary judgment on Plaintiff's remaining claims, this evidentiary Motion will be denied as moot.

[2] The facts herein are based on the parties' statements of material facts and the documentary evidence attached to those statements.  In several instances, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts [DE 56] fails to address facts that Defendant alleges or to contest the asserted facts, and cites no specific evidence refuting them.  See S.D. Fla. L.R. 56.1(a)(2).  All material facts recited by Defendant, supported by the record, and not properly controverted by Plaintiff are deemed admitted.  See S.D. Fla. L.R. 56.1(b).

Hagemann, a sworn law-enforcement officer employed by Defendant City of Fort Lauderdale (the "City"), was on road patrol when dispatchers informed him that the robbery had just occurred and that the suspects had fled in a blue minivan. In response to the dispatch call, Hagemann began driving toward the area of the crime and observed a blue minivan traveling in the opposite direction. Hagemann made a U-turn and followed the minivan, which eventually stopped behind two cars in the left turn lane at a red light.

Hagemann attempted to initiate a traffic stop of the minivan by activating his fully marked vehicle's emergency lights. Using the loud speaker from his vehicle, he ordered the driver of the minivan to open the door. The suspects in the minivan then drove around the left side of the two cars in front of them, proceeded northbound in the southbound lanes, and passed through a red light before turning.

At that point, Fort Lauderdale Police Department ("FLPD") marked vehicles pursued the minivan with their emergency lights and sirens activated. Officers witnessed four suspects bail out of the minivan. After Hagemann joined the pursuit, driving on a route parallel to the other officers, he was advised that the suspects had bailed out of the minivan. Seconds later, Hagemann saw a black male who was thin, about six feet tall, and wearing dark clothing, run across the street. Hagemann immediately exited his vehicle and ordered the suspect to stop running, but the suspect continued running through residential yards and jumped over fences until Hagemann lost sight of him.

Hagemann informed K-9 officers of the area where he last saw the suspect. He then returned to his vehicle and drove to another location to hold down and monitor a

perimeter point as K-9 officers searched the area for the fleeing suspect. While there, Hagemann observed a black male fitting the description of the suspect who had run from him earlier, walking across a nearby street.

Hagemann instructed the black male—later identified as Plaintiff Edward Butler—to stop, telling him that he matched the description of the suspect who had fled. Butler denied being the person Hagemann was looking for, became visibly angry and defensive, and appeared nervous—pacing back and forth in front of Hagemann. Hagemann asked Butler where he was coming from and where he was going to. Butler responded that he was coming from his friend's house and was going home. Although Butler pointed toward his house, he could not tell Hagemann his home address. Butler admits purposefully not telling Hagemann his address because

> he give me a hard time. I was — I was hardheaded. He give me a hard time. I give him a hard time. I told you, I stayed right there. I told him where I'm coming from, but I feel like he was harassing me.
>
> ***
>
> I was trying to be rebellious. I wasn't trying to be that — I was trying to give him a little hard time, like he was giving me a little hard time.
>
> ***
>
> So I had to be a little hardheaded with him since he wanted to be a little rebellious against me. That is how my mind was operating at that time.

Based on Hagemann's experience as a law-enforcement officer, he was suspicious of Butler because he fit the description of the fleeing suspect; he was nervous, angry, and defensive; and, despite his representation that he lived nearby, he was unable to give Hagemann his home address. As a result of this suspicion,

3

Hagemann told Butler to sit on the sidewalk. Through his shoulder radio, Hagemann requested Officer Scott Kingslien, who was with victim Andrea Plath, to bring Plath to Butler's location for a "show-up."

Five minutes later, Kingslien arrived with Plath; both remained in the police car. Hagemann ordered Butler to stand up, which he was hesitant to do. Hagemann then asked Butler to look up several times, which he was also hesitant to do. Kingslien advised Hagemann that Plath had positively and unequivocally identified Butler as the subject with the gun who had robbed her. In a sworn statement, Plath confirmed that she was "100%" sure Butler was the person with the gun.

Based on the victim's positive identification of Butler as the armed assailant, Butler fitting the description of the fleeing suspect, and Butler's suspicious behavior, Hagemann handcuffed Butler, placed him under arrest, and took him into custody. After his arrest, Butler was taken to the FLPD detective's bureau to be interviewed.

Butler was later charged with robbery with a firearm and resisting an officer without violence. He spent over three years in jail as a pretrial detainee. In February 2013, Butler took a polygraph test, which indicated that he was not involved in the armed robbery. Soon thereafter, the State nolle prosequied all charges against Butler.

B.    **Procedural History**

On January 2, 2014, Butler filed this action against the City and Hagemann. See DE 1 (Compl.). Relying on 42 U.S.C. § 1983 and Florida law, Butler pleaded a state-law claim against the City for false arrest (Count 1), a federal claim against Hagemann for unlawful arrest (Count 2), a state malicious-prosecution claim against Hagemann (Count 3), a federal excessive-force claim against Hagemann (Count 4), and a federal malicious-prosecution claim against Hagemann (Count 5). See id.

4

The City and Hagemann filed motions seeking dismissal of all five claims.  See DE 15; DE 29.  In two separate Orders, the Court dismissed with prejudice Counts 1, 2, and 4.  See DE 37; DE 42.  The Court allowed Counts 3 and 5—the state and federal claims alleging malicious prosecution—to proceed.  See DE 37.  Hagemann answered those claims, denying liability and asserting several affirmative defenses, including that he is entitled to qualified immunity.  See DE 43.

Hagemann now seeks summary judgment on the malicious-prosecution claims, arguing that probable cause existed for Butler's arrest and that qualified immunity protects Hagemann from liability on the federal claim.  See DE 52.  Butler has filed a Response opposing the Motion, and Hagemann has submitted a Reply.  See DE 57; DE 65.  The parties have also filed factual statements, supporting evidence, and supplemental authority.  See DE 51; DE 56; DE 66; DE 70.

## II.   Discussion

### A.   Summary Judgment Standards

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must demonstrate that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

If the movant makes this initial showing, the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical

5

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmovant "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker, 911 F.2d at 1577.  If the evidence advanced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

A court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  In so doing, the court must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).  The court also must discern which issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

### B.     Analysis of Defendant's Motion

Butler contends, based on federal and state law, that Hagemann maliciously prosecuted him for the armed robbery.  The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003).  To establish a federal malicious-prosecution claim, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  See Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010).  Under Florida law, a malicious-prosecution plaintiff must show that "(1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994). Failure to prove any one of these elements is "fatal to a claim of malicious prosecution." Id.

Hagemann argues that Butler cannot establish the fourth element of malicious prosecution—namely, "an absence of probable cause" for his arrest.   For probable cause to exist under federal or Florida law, "an arrest must be objectively reasonable

7

based on the totality of the circumstances." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).  "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Lee, 284 F.3d at 1195 (alteration, citation & internal quotation marks omitted).

     When he arrested Butler, Hagemann possessed ample information to support a reasonable belief that Butler had committed the armed robbery.  Butler fit the description of the suspect who had fled from Hagemann just after he learned that the robbery suspects had bailed out of their minivan.  Further, when Hagemann first spoke to Butler, he became visibly angry and defensive, and he appeared nervous, pacing back and forth in front of Hagemann.  Butler also was unable to give his home address to Hagemann.  (Though Butler later admitted he withheld this information on purpose, no evidence shows that Hagemann knew Butler was doing so.)  When another officer brought a victim of the robbery to Butler's location, he was reluctant to stand up and to raise his head.  Once he did, the victim positively and unequivocally identified Butler as the person with the gun who had robbed her.  These facts demonstrate conclusively that Hagemann had probable cause to arrest Butler for committing the robbery.

     Butler maintains, however, that probable cause did not exist because police had already arrested two other suspects who allegedly participated in the robbery.  Based

8

on the victims' statements that two men carried out the robbery, Butler claims that Hagemann could not have reasonably believed that Butler was involved in the crime. But this argument ignores that police were seeking **four** suspects who had bailed out of the minivan fleeing from the crime scene.  See DE 51-6 at 7.  Even assuming that Hagemann knew of the two other arrests, this does not change his reasonable belief that Butler also participated the robbery.

Butler further emphasizes a nolle prosequi memorandum that an Assistant State Attorney wrote for his file on February 6, 2013.  See DE 56-1 at 2-8.  The memorandum cites, among several reasons not to pursue charges against Butler, "Officer Hagemann changing his story [in January 2013] regarding the black male he chased on the night of the incident in that he was no longer sure if the male he chased was in fact the defendant."  Id. at 7; see id. at 6.  Hagemann contends that the memorandum is inadmissible hearsay, and the Court finds this argument well-taken.  See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  In any event, Hagemann's testimony here is that Butler **matched the description** of the suspect he chased, not that Hagemann **was sure** Butler was the suspect.  This testimony, along with the other evidence discussed above, establishes that probable cause existed at the time Butler was arrested.  See Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").[3]

---

[3] The Court has considered Butler's other arguments opposing summary judgment, but finds them to be without merit.

Because the record shows conclusively that Hagemann had probable cause to arrest Butler for the armed robbery, Butler's claims for malicious prosecution fail.[4] Hagemann is therefore entitled to summary judgment.

### III. Conclusion

For the reasons discussed, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Scott Hagemann's Motion for Final Summary Judgment [DE 52] is **GRANTED**;

2. Plaintiff's Motion in Limine to Exclude Police Report, Affidavit of Officer Hagemann and Daubert Motion to Exclude Officer Hagemann's Opinion Testimony [DE 67] is **DENIED AS MOOT**; and

3. The Court will enter a separate Final Judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 31st day of August, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

---

[4] Due to the Court's conclusion that probable cause existed for Butler's arrest, the Court need not discuss Hagemann's alternative argument that Butler's federal claim is foreclosed by qualified immunity. Still, the Court notes that qualified immunity applies even if Hagemann had only "arguable" probable cause for Butler's arrest. See Grider, 618 F.3d at 1257. Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990). For the same reasons Hagemann had actual probable case to arrest Butler, he likewise possessed arguable probable cause.

10